M. L. BENNETT d/b/a Fiesta Dance Clubs et al., Appellants,

v.

Lenore BAILEY, Appellee.

No. 5415.

Court of Civil Appeals of Texas, Eastland.

March 27, 1980.

Rehearing Denied April 24, 1980.

Jack K. Dahlberg, Jr., Corpus Christi, for appellants.

M. W. Meredith, Jr., Meredith, Donnell & Edmonds, William A. Abernethy, Law Offices of Howard F. Sudduth, Corpus Christi, for appellee.

McCLOUD, Chief Justice.

Plaintiff, Lenore Bailey, sued defendants, M. L. Bennett, individually and d/b/a Fiesta Dance Clubs, M. L. B. Properties, Inc., and Clark Sesler, manager of Fiesta Dance Clubs, seeking damages for alleged violations of the Deceptive Trade Practices-Consumer Protection Act, Tex.Bus. & Comm. Code Ann. § 17.41 et seq. The trial court rendered judgment, based on jury findings, against the defendants for treble damages of $78,001.00 plus attorney's fees. Defendants appeal. We affirm.

Plaintiff, a widow, paid Fiesta $29,669.45 within approximately two months for dance lessons. She was offered an additional dance contract costing $49,000.00. She refused the offer. Upon her refusal, she was offered a new $9,000.00 contract. Again, she refused. Shortly thereafter, she was injured by a Fiesta dance instructor while dancing.

The jury found in Special Issues 1, 2 and 3 that Bennett, Sesler and Simmons, a Fiesta dance instructor, engaged in an "unconscionable act or course of action" in their dealings with plaintiff concerning dancing instructions. See Tex.Bus. & Comm.Code Ann. § 17.50(a)(3).

■ The trial court defined "unconscionable act or course of action" as the term is presently defined in Section 17.45(5) of the Deceptive Trade Practices Act. The instruction stated:

In answering Questions 1, 2 and 3, you are instructed that the term "unconscionable act or course of action" means an act or practice which, to a person's detriment: (a) takes advantage of the lack of knowledge, ability, experience or capacity of a person to a grossly unfair degree; or (b) results in a gross disparity between the value received and consideration paid, in a transaction involving transfer of consideration.

Defendants did not object to the court's definition. Defendants now argue the court committed "fundamental" error in applying the statutory definition because the term had not been statutorily defined at the time of the transactions made the basis of plaintiff's suit. We disagree. Our Supreme Court in *McCauley v. Consolidated Underwriters*, 157 Tex. 475, 304 S.W.2d 265 (1957) held that fundamental error is an error which directly and adversely affects the interest of the public generally, as that interest is declared by our statutes or Constitution. The trial court did not commit fundamental error.

■ Defendants next contend the trial court erred in the submission of the "unconscionable act or course of action" issues because, as submitted, the issues fail to identify or be conditioned upon a specific act or course of action.

Plaintiff alleged generally in her petition that the defendants committed "deceptive trade practices," and she sought recovery under the "Deceptive Trade Practices-Consumer Protection Act." She made no specific allegations. Defendants did not except to the general allegations. We hold that under the general pleading the court did not err in submitting the issues broadly. *Mobil Chemical Company v. Bell*, 517 S.W.2d 245 (Tex.1974). Defendants cite *Scott v. Atchison, Topeka and Santa Fe Railway Company*, 572 S.W.2d 273 (Tex. 1978) and *American Transfer and Storage Company v. Brown*, 584 S.W.2d 284 (Tex. Civ.App.—Dallas 1979, writ granted). They are not controlling. In those cases, the plaintiffs alleged specific acts. A global submission, without proper limitation, may

be improper when there is a variance between the pleadings and the evidence. There is no variance in the instant case. *Siebenlist v. Harville*, 596 S.W.2d 113 (Tex. 1980).

Defendants further assert that there is no evidence, or alternatively, factually insufficient evidence to support the jury's answers to Special Issues 1, 2 and 3. We disagree. In considering defendants' no evidence points, we must review the evidence in its most favorable light, considering only the evidence and inferences supporting the findings, and reject the evidence and inferences contrary to the findings. *Martinez v. Delta Brands, Inc.*, 515 S.W.2d 263 (Tex. 1974). We consider and weigh all the evidence when passing upon defendants' factually insufficient evidence points. *In re King's Estate*, 150 Tex. 662, 244 S.W.2d 660 (1951).

Plaintiff first learned of the Fiesta Dance Club in January 1976 when she read an advertisement offering a $60.00 membership for $5.00. She took the introductory lessons. Her instructor, Barrera, told her that she danced "rather well" and that she should take the "Fun and Confidence" dance course that consisted of 32 lessons. Plaintiff signed her first contract and paid Fiesta $616.00. Shortly thereafter, her new instructor, Maldonado, told plaintiff that he had been working most of the night on a new plan for her. She told Maldonado she could not afford the new course. Maldonado told her that he wanted her to do it, and took her to Sesler's office. After talking with Sesler and Bennett, she signed her second contract on March 5, 1976, and paid Fiesta $10,153.46 after withdrawing $9,000.00 from her savings account. Sesler told plaintiff they would always pick her up for the night parties since she suffered night blindness. She testified that Bennett told her they would "throw in" a trip to Las Vegas if she signed the contract. The second contract, called the Bronze and Silver Dance Programs, provided for 550 additional lessons. After signing the second contract, a new instructor, Simmons, was assigned to plaintiff. Simmons told plaintiff that he was asked by Sesler to come to Fiesta and teach her. Seven lessons later, Simmons told plaintiff that he had worked all day Sunday on a new plan for her. Plaintiff testified she told Simmons she could not take the new course. She stated that Simmons physically "dragged" her into Sesler's office. Simmons, Sesler and Bennett told plaintiff she should take the "Gold and Supreme Gold" course, and that she should join the "Tiffany Club," which consisted of five ladies. Plaintiff was told that before she could become a member of the club she would have to go to Dallas and pass a dance test. The new Tiffany contract would cost $18,900.00. There is evidence that before going to Dallas, plaintiff paid Fiesta $5,900.00 on the new $18,900.00 contract. Plaintiff, Bennett, Sesler and Simmons flew to Dallas. The dance test took about 15 minutes. Plaintiff passed. That evening, Bennett, Sesler and Simmons took plaintiff out for dining and dancing. Plaintiff signed the new $18,900.00 contract on March 29, 1976. Bennett stated they would "throw in" a trip to Hawaii. At the time plaintiff paid the $18,900.00, she had only taken 22 hours of the second contract which provided for 550 lessons. Shortly thereafter, Simmons left and Mitchell became plaintiff's new dance instructor. After dancing with Mitchell on "video," plaintiff was invited back to Sesler's office and given a "corsage." Plaintiff testified the videotape was shown in color on a television screen. She stated it was "very pretty." She said that at this time, Bennett and Sesler proposed a new $49,000.00 contract. Plaintiff refused the proposal. Bennett and Sesler counterposed a new $9,000.00 contract. Plaintiff again refused. The discussion covering the $49,000.00 contract occurred in June or July, 1976. Plaintiff testified that after she refused to sign the $49,000.00 contract, she no longer received compliments and attention from the Fiesta staff. She was told that they would no longer pick her up at night for the night parties. Shortly thereafter, while dancing at the studio, an instructor stepped on her foot. It was approximately 11 weeks before she could wear a shoe on the injured

foot. When the foot healed, she returned to the studio and the same instructor, while dancing with plaintiff, picked her up and spun her in the air. Plaintiff sustained two broken ribs. Plaintiff decided she would not return for additional lessons. At that time, she had 1,027 units remaining on the three contracts. The trip to Las Vegas was cancelled and the date for the Hawaii trip was never set.

From the evidence, the jury could reasonably conclude that, prior to signing each contract, plaintiff was subjected to a calculated treatment of flattery and that her better judgment was diminished by excessive compliments. Bennett, Sesler, and the individual dance instructors were to receive a percentage of money paid by plaintiff on the various contracts. The jury could evaluate defendants' motives by their conduct. As soon as plaintiff commenced a particular program, a new instructor would appear, and a new, more expensive contract would be offered. When plaintiff finally refused to sign further contracts, defendants' attitude toward plaintiff altered radically. The jury could properly infer from the evidence that plaintiff was a lonely widow who lacked the knowledge, ability, experience, or capacity to withstand the premeditated attention lavished upon her by defendants, who purposely took advantage of her vulnerability to a grossly unfair degree. We hold there is some evidence to support the jury's answers to Special Issues 1, 2 and 3, and after reviewing all the evidence, we hold the evidence is factually sufficient to support the findings by the jury.

No producing cause issues were submitted. There was no objection to the omission. We hold there is some evidence to support the trial court's implied finding that the producing cause of plaintiff's actual damages was the "unconscionable act or course of action" of each defendant. Tex. R.Civ.P. 279.

We overrule defendants' attack upon the award of attorney's fees. We think the stipulation of counsel is adequate to support the award. Defendants' reliance on *Bray v. Curtis*, 544 S.W.2d 816 (Tex.Civ.

App.—Corpus Christi 1976, writ ref'd n. r. e.) is misplaced. In that case, the complaining party properly objected to the submission of the attorney's fee issue.

The jury also found that defendants made certain misrepresentations to plaintiff and that the specific misrepresentations constituted a "deceptive trade practice." See Tex.Bus. & Comm.Code Ann. § 17.46(a); *Spradling v. Williams*, 566 S.W.2d 561 (Tex. 1978). Defendants attack these findings. We will not pass on or discuss defendants' points of error pertaining to the specific acts found by the jury to constitute deceptive trade practices. The jury's finding that defendants engaged in an unconscionable act or course of action is sufficient to uphold the award of treble damages and attorney's fees.

The judgment of the trial court is affirmed.