

# In the
# Court of Appeals
# Second Appellate District of Texas
# at Fort Worth

_____

No. 02-23-00213-CV

_____

STATE FARM LLOYDS, Appellant

V.

ALICE LADKIN, Appellee

On Appeal from the 96th District Court
Tarrant County, Texas
Trial Court No. 096-324346-21

Before Kerr, Birdwell, and Bassel, JJ.
Memorandum Opinion by Justice Birdwell

# MEMORANDUM OPINION

Appellee Alice Ladkin—a widow and octogenarian—sustained wind and hail damage to her roof that caused her living-room ceiling to leak. But Appellant State Farm Lloyds questioned the severity of the damage and denied Ladkin's claim as below her deductible. Then, after an appraisal panel agreed with Ladkin that a full roof replacement was necessary, State Farm disputed the damage's cause and timing, attributing it to preexisting conditions or a post-claim storm. A jury sided with Ladkin, awarding her actual damages for her roof and repairs, treble damages based on State Farm's knowingly unconscionable conduct, and attorney's fees.

In seven issues, which we condense to four, State Farm argues that (1) Ladkin could not recover actual damages in excess of the appraisal award; (2) insufficient evidence supported the findings underlying the treble-damages award; (3) the trial court abused its discretion by excluding State Farm's expert testimony on causation; and (4) factually insufficient evidence supported the award of appellate fees. Generally, these challenges fail; the first and third are unpreserved, while the second turns on the jury's credibility determinations, which we cannot and will not supplant. Because Ladkin concedes the fourth issue, though, we will reverse and remand for a new trial on appellate fees.

# I. Background

In July 2019, Ladkin filed a claim with her homeowner's insurance provider—State Farm—reporting that a storm had damaged her home and caused water to leak from her living-room ceiling.

## A. Claim

Ladkin hired an independent contractor to tarp the leaking portion of her roof, and the contractor chalk-marked the shingles that he believed had been damaged by hail. He also chalk-marked hail damage to other components of Ladkin's home, such as her garage door, windows, and gutters. The contractor concluded that, while many of the hail-damaged components could be repaired, Ladkin's entire roof needed to be replaced.[1]

But when State Farm's adjuster looked at the house a few days later, the adjuster determined that none of the shingles chalk-marked by Ladkin's contractor had wind or hail damage. The adjuster later admitted that he had not looked under the tarp during his inspection, though. And the adjuster further admitted that he had observed wind or hail damage to other components of Ladkin's property—namely, her garage door, window screens, and window beading. Nonetheless, he concluded that a roof replacement was unnecessary.

---

[1]State Farm presented evidence that, a few weeks after Ladkin filed her claim, her contractor sent State Farm a repair estimate for approximately $53,000. Ladkin testified that she was not aware of the estimate, and later, the contractor repaired Ladkin's property damage for substantially less than this amount.

The adjuster thus estimated the total cost of repairs to be below Ladkin's $2,797 deductible. Even providing for repairs to the other hail-damaged components of Ladkin's home and for repairs to five of the tarp-covered shingles—which, the adjuster later explained, he took the contractor's word had been damaged by wind—the total cost was below $2,797. So, within hours of completing his inspection, the adjuster issued a letter denying Ladkin's claim to the extent that it exceeded her deductible.[2] That letter explained that "State Farm agree[d] there [wa]s covered damage caused by wind and hail" to certain areas of Ladkin's home but that the adjuster had "observed that there [we]re a number of composition shingles that d[id] not have any damage."

## B.    Appraisal

Unsatisfied, Ladkin invoked the appraisal provision of her insurance policy. She and State Farm each selected an appraiser to estimate the amount of damage to her home, and when the parties' selected appraisers could not agree, an umpire broke the tie. The umpire sided with Ladkin's appraiser; the two found that a roof replacement was necessary and estimated the total amount of property damage at approximately $20,000.[3]

---

[2]The estimated repair cost was $3,234.09, but State Farm reduced that figure by $457.83 to account for depreciation, bringing the total below $2,797.

[3]The appraisal award set the amount of loss at $20,179.51. Our discussion of the award uses the rounded figure for ease of reference.

But the appraisal process took more than a year, and during that time, Ladkin's roof continued to leak. Ladkin's son—who routinely assisted his elderly mother with household tasks—periodically emailed State Farm to check on the status of the claim and to notify State Farm of the ongoing leak in Ladkin's home. The son later testified that, "[e]very time [he] would visit the home, [he] would see the buckets sitting in the corner" catching water and would be concerned that, because the damage had not been addressed, it was getting worse.

State Farm, meanwhile, pursued another potential objection to Ladkin's claim: causation. While the appraisal was underway, State Farm hired a forensic engineering firm—Pie Consulting & Engineering[4]—to determine the cause of damage, and in December 2019, Pie provided a report explaining why it believed there had not been any wind or hail damage to Ladkin's shingles. It opined that Ladkin's roof shingles instead showed signs of "blistering and mechanical damage."

So, when the appraisal process concluded in late 2020, State Farm did not pay the $20,000 award. It explained that it did not consider the appraised roof damage to have been caused by hail, and it mailed Ladkin a check for approximately $2,500 to cover some of the other damaged items listed in the appraisal.

---

[4]Pie was purchased in 2020 and renamed Lerch Bates Incorporated. The parties and witnesses referred to the firm by its pre-2020 name, so we do likewise.

Ladkin did not cash the check. Instead, she took out a loan to repair her property[5] and sued State Farm for breach of the insurance policy, breach of the duty of good faith and fair dealing, and violations of the Insurance Code and the Deceptive Trade Practices Act (DTPA). *See generally* Tex. Bus. & Com. Code Ann. § 17.50; Tex. Ins. Code Ann. §§ 541.060, 542.058, 542.060.

## C. Trial

At the jury trial that followed, causation was a key issue—in more ways than one.

First, the parties disagreed about whether causation was properly before the jury.[6] Ladkin argued that causation was not for the jury to determine, claiming that the appraisal panel was the factfinder on causation, that the panel had resolved the causation issue by limiting its award to wind and hail damage, and that the panel's

---

[5]Ladkin's contractor agreed to complete the relevant repairs for $21,950, and the contractor did an additional $6,400 in decking repairs as part of the same project. Ladkin took out a $7,000 loan to pay for a portion of the contractor's bill, but the balance remained outstanding at the time of trial.

[6]The trial court addressed this issue multiple times, including at the very beginning of trial. In a hearing outside the jury's presence, both parties cited the same Texas Supreme Court case—*State Farm Lloyds v. Johnson*, 290 S.W.3d 886 (Tex. 2009)—to support their diametrically opposed understandings of the appraisal panel's authority to resolve causation. The trial court agreed with Ladkin's interpretation of *Johnson*, and it made various evidentiary rulings on that basis. However, when Ladkin requested a jury instruction regarding the appraisal panel's authority to resolve causation, the trial court denied the request.

resolution of the issue was binding on the parties.[7] State Farm, meanwhile, told the jury that "[t]he appraisal award ultimately sets damages, the damages seen[, but] it doesn't establish that those [we]re caused by hail."

Despite their disagreement as to whether causation was a valid jury issue, both parties dedicated much of their evidence and argument to the subject. State Farm claimed that the roof damage chalk-marked by Ladkin's contractor was attributable to blistering or wear and tear and called its adjuster to confirm that he "did not observe any hail damage to the roof." State Farm further noted that a second tarp had been added to Ladkin's roof in 2020 and pointed to the second tarp as evidence that the appraisal award may have included damage sustained in a post-claim storm.

To rebut these allegations, Ladkin elicited testimony from the appraisal panel's umpire regarding what his inspection had revealed and why he had concluded that her roof had been damaged by wind or hail. She also called an expert in forensic engineering, who testified that the photographs of her roof shingles showed wind and hail damage, described why and how he came to that conclusion, and explained the characteristics that distinguished the hail hits in the photographs from blistering.

When the time came for State Farm to call its expert from Pie, though, Ladkin objected. She asserted that, because Pie's expert report had not mentioned any post-

---

[7]Ladkin called the umpire to testify that the appraisal panel had determined causation as part of its award, and she argued to the jury that State Farm was reneging on its contractual obligations by failing to abide by the appraisal panel's allegedly binding causation determination.

claim damage, the expert could not opine on that subject. As for preexisting damage, Ladkin revisited her argument that the appraisal panel's causation determination was binding, and she contended that allowing State Farm's expert to testify on that question could confuse the jury. State Farm conceded the first point, confirming that it would not ask its expert about post-claim damage. But it argued that its expert should be permitted to testify regarding whether the photographs of Ladkin's roof depicted hail damage or something else, such as wear and tear, mechanical damage, or blistering. The trial court sustained Ladkin's objection and limited State Farm's expert testimony accordingly.

The extent and effect of such limitation was unclear. Despite the trial court's ruling, the Pie expert described the markers he looked for to determine whether a roof had been damaged by hail, he clarified what several photographs of Ladkin's roof showed and how they factored into his causation analysis, and he testified that he "found no damage consistent with hail to [Ladkin's] roof shingles." State Farm did not make an offer of proof or file a bill of exception showing what additional testimony it had intended to elicit.[8]

Either way, the jury's verdict reflected that it considered Ladkin's evidence and witnesses more credible. It found in Ladkin's favor on all of her claims, concluding that she had sustained $40,000 in wind or hail damage to her property; that State Farm had enough information to pay the claim when its adjuster inspected the property in

---

[8]Pie's expert report was not admitted into evidence.

July 2019; and that State Farm violated various statutes in its handling of the claim, including by knowingly engaging in unconscionable conduct. The trial court entered judgment in accordance with the verdict, awarding Ladkin $40,000 in actual damages, $35,000 in treble damages under the DTPA, prompt-payment interest, and significant trial and appellate attorney's fees.

## II. Discussion

State Farm argues that (1) Ladkin's actual damages were capped by the $20,000 appraisal award, so the judgment's actual damages, prompt-payment interest, and attorney's fees must be reduced accordingly; (2) legally and factually insufficient evidence supported the extra-contractual findings underlying the award of treble damages; (3) the trial court abused its discretion by excluding State Farm's expert causation testimony; and (4) factually insufficient evidence supported the award of appellate fees.

### A. State Farm failed to preserve its appraisal-award estoppel issue.

First, State Farm argues that, as a matter of law, the appraisal award was binding on the parties as to the amount recoverable under Ladkin's insurance policy, so absent evidence of an independent injury, Ladkin could not recover actual damages in excess of the appraisal award.[9] While State Farm attempts to frame this issue as a matter of legal and factual sufficiency, the substance of its argument is not that Ladkin failed to offer evidence of $40,000 in actual damages—the amount found by the

_____

[9]Ladkin does not allege that she established an independent injury.

9

jury—but that Ladkin is estopped from recovering more than the $20,000 appraisal-award valuation.[10]

Generally, "[t]he effect of an appraisal decision is to estop one party from contesting the issue of the value of damages in a suit on the insurance contract." *Ortiz v. State Farm Lloyds*, 589 S.W.3d 127, 132 (Tex. 2019) (quoting *Allison v. Fire Ins. Exch.*, 98 S.W.3d 227, 253 (Tex. App.—Austin 2002, pet. granted, judgm't vacated w.r.m.)). But estoppel is an affirmative defense, and "[a]s with other affirmative defenses, it is the defendant's burden to raise the issue" by "plead[ing], prov[ing], and secur[ing] findings to sustain" it. *Woods v. William M. Mercer, Inc.*, 769 S.W.2d 515, 517 (Tex. 1988); *Allison*, 98 S.W.3d at 253; *see* Tex. R. Civ. P. 94; *see also Hall v. Germania Farm Mut. Ins. Ass'n*, No. 07-16-00304-CV, 2017 WL 4630028, at *3 (Tex. App.—Amarillo Oct. 13, 2017, no pet.) (mem. op.) (noting that insurer bore the burden on its appraisal-award estoppel defense).

Although State Farm's live pleading listed estoppel among its many defenses, State Farm neither submitted the issue to the jury nor objected to its omission from

---

[10]Because State Farm attempts to frame its estoppel complaint as a matter of sufficiency, Ladkin's response addresses the sufficiency of the evidence to support the $40,000 award, and State Farm's reply seizes on certain aspects of and concessions in Ladkin's response. Regardless, the sufficiency issue is not before us; the substance of State Farm's opening brief does not analyze the sufficiency of the evidence, Ladkin did not file a notice of appeal, and State Farm cannot raise a new issue in its reply brief. *See* Tex. R. App. P. 25.1(c) ("A party who seeks to alter the trial court's judgment or other appealable order must file a notice of appeal."); *Holdridge v. Wallace Ryne, O.D., P.C.*, No. 02-23-00420-CV, 2024 WL 3455838, at *7 n.16 (Tex. App.—Fort Worth July 18, 2024, no pet.) (mem. op.) ("A party may not use its reply brief to raise new issues.").

the charge. *See* Tex. R. Civ. P. 279; *In re S.A.P.*, 156 S.W.3d 574, 577 (Tex. 2005) (holding that estoppel was waived when it was not submitted to the jury); *In re S.H.*, No. 02-17-00188-CV, 2017 WL 4542859, at *14 (Tex. App.—Fort Worth Oct. 12, 2017, no pet.) (mem. op.) (holding that appellant waived estoppel defense by failing to plead it or present it to the factfinder); *cf. Estate of Lopez*, No. 10-18-00278-CV, 2021 WL 2252138, at *10 (Tex. App.—Waco May 21, 2021, pet. denied) (mem. op.) (holding party waived limitations affirmative defense by failing to secure jury findings or object to defense's omission from the jury charge). So whether or not the appraisal award could have estopped Ladkin from recovering more than $20,000 in actual damages,[11] State Farm has waived the issue.

We overrule State Farm's challenges to the award of actual damages, along with its corresponding challenges to the calculation of interest and attorney's fees.[12]

---

[11]Ladkin asserts that State Farm's position would permit an appraisal award to "set[] the amount of loss in perpetuity," even if the insurer does not timely pay the award. Because State Farm did not preserve its estoppel defense for review, we need not address the length of time or conditions under which an appraisal award binds the parties. *See* Tex. R. App. P. 47.1.

[12]State Farm raises these challenges in issues 1(a), 1(b), 1(c), 1(e), and 2(a) of its brief. Within those issues, in specifying the amount of the judgment that it seeks, State Farm further argues that the appraisal award must be reduced to account for Ladkin's deductible and State Farm's alleged prior payment. State Farm has not raised these reductions as independent challenges to the $40,000 judgment, though.

However, even if it had, such challenges would fail. First, State Farm's contention that the jury's actual-damages award did not account for Ladkin's deductible relies entirely upon the wording of Question 2 of the jury charge, which addressed State Farm's breach of contract. Ladkin elected to recover the actual

11

**B.  Sufficient evidence supported the treble-damages award.**

State Farm next contends that legally and factually insufficient evidence supported the extra-contractual findings of wrongful conduct that underlie the jury's award of $35,000 in treble damages,[13] i.e., the findings that State Farm knowingly committed unconscionable conduct in violation of the DTPA.[14]

---

damages awarded in Question 10 of the jury charge, which was worded differently and addressed State Farm's DTPA violation.

Second, for State Farm to establish its entitlement to an offset for a prior payment, it was required to secure jury findings on this disputed affirmative defense. *See Wheelbarger v. Landing Council of Co-Owners*, 471 S.W.3d 875, 891 (Tex. App.—Houston [1st Dist.] 2015, pets. denied). The issue was not submitted to the jury, and on appeal, State Farm does not challenge its omission from the charge.

[13]State Farm did not adequately brief this issue. *See* Tex. R. App. P. 38.1(i). It broadly attacks all of the jury's extra-contractual findings—the findings that State Farm knowingly violated the Insurance Code, knowingly violated the DTPA, and engaged in bad-faith conduct—without distinguishing between the causes of action or identifying which cause of action supports the challenged $35,000 treble-damages award. Its sufficiency challenge does not so much as cite to the DTPA.

Nonetheless, in an effort to reach the merits of State Farm's complaint, we overlook its briefing deficiencies and address its challenge to the extra-contractual findings of wrongful conduct that underlie the $35,000 treble-damages award. *See Horton v. Stovall*, 591 S.W.3d 567, 570 (Tex. 2019) ("admonish[ing] appellate courts to reach the merits of an appeal whenever reasonably possible" (internal quotation marks omitted)).

[14]Although a violation of Chapter 541 of the Insurance Code is also a violation of the DTPA, Tex. Bus. & Com. Code Ann. § 17.50(a)(4), and although the jury found that State Farm had violated Chapter 541, the challenged $35,000 treble-damages award was premised on the jury's findings of knowingly unconscionable conduct.

### 1. Standard of Review and DTPA

Under the DTPA, an insured may recover actual damages caused by an insurer's "unconscionable action or course of action." Tex. Bus. & Com. Code Ann. § 17.50(a)(3). An "unconscionable action or course of action" is an "act or practice which, to a[n insured's] detriment, takes advantage of the lack of knowledge, ability, experience, or capacity of the consumer to a grossly unfair degree." *Id.* § 17.45(5). The resulting unfairness must be "glaringly noticeable, flagrant, complete[,] and unmitigated." *Bradford v. Vento*, 48 S.W.3d 749, 760 (Tex. 2001) (quoting *Ins. Co. of N. Am. v. Morris*, 981 S.W.2d 667, 677 (Tex. 1998)). And if the insurer's unconscionable conduct is committed knowingly, meaning that it is with "actual awareness, at the time of the act or practice complained of, of the falsity, deception, or unfairness of the act or practice," Tex. Bus. & Com. Code Ann. § 17.45(9), then the insured may recover treble damages of up to three times the amount of her actual damages, *id.* § 17.50(b)(1).

To determine the factual sufficiency of the evidence supporting DTPA findings, we consider and weigh all of the pertinent evidence to assess whether the credible evidence supporting the findings is so weak or the findings are so contrary to the great weight and preponderance of the evidence that a new trial is warranted. *Golden Eagle Archery, Inc. v. Jackson*, 116 S.W.3d 757, 761–62 (Tex. 2003); *Anderson v. Hiley Cars Hurst, LP*, No. 02-23-00091-CV, 2024 WL 3195094, at *6 (Tex. App.—Fort Worth June 27, 2024, no pet.) (mem. op.); *Norris v. Jackson*, No. 2-09-265-CV, 2010

13

WL 4261541, at *3 (Tex. App.—Fort Worth Oct. 28, 2010, no pet.) (mem. op.). If the evidence is factually sufficient to support the challenged findings, then it is necessarily legally sufficient to do so. *Herchman v. Lee*, No. 02-22-00217-CV, 2024 WL 4898787, at *3 (Tex. App.—Fort Worth Nov. 27, 2024, no pet. h.) (mem. op.).

## 2. Analysis

According to State Farm, there was no evidence that it took advantage of Ladkin's lack of knowledge or ability, much less that it did so knowingly. It claims that the evidence showed nothing more than a bona fide disagreement regarding the cause of Ladkin's roof damage and the scope of the appraisal panel's authority. But whether State Farm's disagreement with Ladkin was, in fact, bona fide was for the jury to decide as "the sole judge of the credibility of witnesses and the weight to be given to their testimony." *Golden Eagle Archery*, 116 S.W.3d at 761; *Anderson*, 2024 WL 3195094, at *6. And the jury heard evidence that called State Farm's sincerity into question.

Ladkin presented evidence that State Farm disregarded numerous, conspicuous hail spots on her roof without a credible explanation for doing so:

- Ladkin's contractor had circled the areas of hail damage in chalk, overtly identifying them for State Farm's adjuster.

- According to Ladkin's expert, many of the chalk-marked spots were "typical hail hits" and exhibited the symptoms of hail damage.

- State Farm's adjuster confirmed that he saw the chalk marks, that "[t]here were quite a few" of them, and that he spoke with Ladkin's contractor about the alleged hail damage.

14

- The adjuster also confirmed that he saw wind or hail damage to other components of Ladkin's property, including her garage door.

- Yet, the adjuster reported no hail damage to the chalk-marked shingles.

- When the adjuster was asked to tell the jury whether several specific photographs of chalk-marked areas reflected hail damage, he often hedged. Asked about one photograph, he testified that it "may or may not be consistent with hail," and asked about another, he stated that it was "hard to say" but that it "does not look consistent with hail."

- Nonetheless, on the basis of his inspection, the adjuster immediately denied Ladkin's claim, sending her a denial letter the same day.

The jury also heard evidence that the adjuster issued the denial letter without so much as looking under the tarp on Ladkin's roof:

- He testified that the tarp covered approximately "10 or 12" shingles of Ladkin's roof and that her contractor had explained that it was covering wind damage.

- The adjuster testified that he had not removed the tarp or asked Ladkin's contractor to remove it, even though, "[u]sually," he did ask contractors to remove such tarps so he "c[ould] visually see what kind of damage . . . might be present."

- Although the adjuster testified that he had taken the contractor's word regarding the "wind[-]damaged shingles" and had included those shingles in his estimate, he recommended replacing just five shingles rather than the full number concealed under the tarp.

Based on this evidence, the jury was entitled to view the adjuster's inspection as perfunctory and State Farm's denial of coverage as unsubstantiated, raising a question as to whether the denial was fact-driven.

State Farm's evolving excuses for denying Ladkin's claim further cast doubt on the sincerity of its reasons for doing so. The July 2019 denial letter acknowledged that

15

"there [wa]s covered damage caused by wind and hail" to certain areas of Ladkin's home but stated that "a number of composition shingles . . . d[id] not have any damage." The letter said nothing about Ladkin's roof having been damaged by blistering, wear and tear, or another condition. In fact, the adjuster testified that he did not recall seeing any deterioration or lapses in roof maintenance, except "[m]aybe some of the blistering," and that anything more would likely have been mentioned in the denial letter if it had been observed.

Yet, at trial, State Farm defended its denial of Ladkin's claim by arguing that her roof damage had been caused by either a preexisting condition or a post-claim storm. While it pointed to Pie's analysis as evidence that its causation theory was reasonable, State Farm did not commission or receive Pie's report until months after its adjuster had denied Ladkin's claim. State Farm dedicates much of its briefing to insisting that it was entitled to rely on Pie's report and present its causation-related defense to the jury, but this misses the point. The jury—as the sole arbiter of the weight and credibility of the evidence—could view State Farm's shifting excuses and after-the-fact expert analysis as disingenuous. *See Golden Eagle Archery*, 116 S.W.3d at 761.

The *coup de grâce* of Ladkin's DTPA claim was the evidence that she was elderly and vulnerable. *See Norris*, 2010 WL 4261541, at *7–8 (affirming DTPA findings of intentional unconscionability when defendant sold and installed faulty air-conditioning system and made threats and accusations against "a retired, single, elderly woman with

16

no college degree"); *Bennett v. Bailey*, 597 S.W.2d 532, 534–35 (Tex. App.—Eastland 1980, writ ref'd n.r.e.) (affirming DTPA findings of unconscionability when dance-lesson provider used "calculated treatment of flattery" to induce "lonely widow" into increasingly expensive lessons); *see also* 27 Genevieve Hebert Fajardo & Ramona L. Lampley, *Texas Practice Series: Consumer Rights and Remedies* § 4.13 (3d ed. 2024) (noting that "[t]he vulnerability of the consumer is . . . relevant to the determination of unconscionability" and that "factors such as . . . old age . . . increase the likelihood that unconscionability will be found"). The jurors not only heard testimony regarding Ladkin's infirmity but witnessed it themselves:

- Ladkin was approximately 80 years old when she filed her claim with State Farm, and she was 85 years old at the time of trial. She had lived in her home for more than 40 years.

- Ladkin was a widow and testified that her husband had died in 2018—just a year before the storm damage at issue. She had lived on her own since her husband's death.

- During Ladkin's testimony, she periodically exhibited confusion, indicated that she could not hear questions, and had difficulty recalling facts or dates.

- Ladkin relied on her son to assist her with her claim. Her son testified that he visited his mother "every other week" to "help out with buying groceries, picking up medication, [and] doing small things around the home." And each month, he "assist[ed] her with paying her bills," as "[a] lot of things are electronic these days, and that can be a challenge for her."

- Ladkin's son explained that he had emailed State Farm multiple times throughout the claims process to update the insurer regarding the ongoing roof leak in his mother's living room and to communicate the urgent need for repairs.

- Ladkin testified that, when State Farm denied her claim, she was "worried that [she] couldn't get the roof fixed" despite its continuing to leak. She stated that the claims process left her feeling "deceived" by State Farm.

Overall, the jury heard pertinent, credible evidence that State Farm disregarded conspicuous hail damage, issued an unsubstantiated denial letter without looking under Ladkin's roof tarp, gave shifting excuses for its denial—many of which evolved long after the denial letter was issued—and took all of these actions with full awareness of Ladkin's age and infirmity. This evidence was sufficiently strong to support the jury's finding that State Farm knowingly took advantage of Ladkin's "lack of knowledge, ability, experience, or capacity . . . to a grossly unfair degree." Tex. Bus. & Com. Code Ann. § 17.45(5); *see Bennett*, 597 S.W.2d at 535 (affirming DTPA findings and noting that "[t]he jury could evaluate defendants' motives by their conduct"). And because the evidence was factually sufficient to support the jury's DTPA findings, it was also legally sufficient. *See Herchman*, 2024 WL 4898787, at *3.

We overrule State Farm's sufficiency challenges to the extra-contractual findings underlying the $35,000 treble-damages award.[15]

## C.    State Farm did not preserve its challenge to the exclusion of testimony.

Next, State Farm complains that the trial court abused its discretion by excluding State Farm's expert causation testimony.[16] This issue was not preserved.

---

[15]State Farm raises these challenges in issues 1(d) and 2(a) of its brief.

[16]Portions of State Farm's argument take issue with the admission of the umpire's causation testimony as well. But State Farm indirectly concedes that the

Generally, to preserve error in the exclusion of testimony, a party must either (1) file a bill of exception or (2) submit an offer of proof. *See* Tex. R. App. P. 33.1(a), 33.2; Tex. R. Evid. 103(a)(2); *Anderson*, 2024 WL 3195094, at *3. An offer of proof must show the substance of the testimony with enough specificity to enable the reviewing court to determine its admissibility and harm. *See* Tex. R. Evid. 103(a)(2) (requiring proponent to "inform[] the court of [the excluded evidence's] substance by an offer of proof, unless the substance [i]s apparent from the context"); *Stephens v. Stephens*, No. 02-23-00081-CV, 2024 WL 4233118, at *2 (Tex. App.—Fort Worth Sept. 19, 2024, pet. filed) (mem. op.). Here, it is undisputed that State Farm did not file a bill of exception or submit a traditional offer of proof in question-and-answer form. *Cf.* Tex. R. Evid. 103(c) (contemplating offer of proof in question-and-answer form outside the jury's presence).

But State Farm contends that the substance of its expert's anticipated testimony was sufficiently clear from the parties' discussion of Ladkin's objection. State Farm notes that Ladkin's counsel had objected to the expert's mentioning "the preloss condition of the roof [so as to] suggest[] that the roof was damaged or in poor shape

umpire's causation testimony was cumulative of that from Ladkin's expert. *See Reliance Steel & Aluminum Co. v. Sevcik*, 267 S.W.3d 867, 873 (Tex. 2008) (recognizing that the "admission or exclusion [of evidence] is likely harmless if the evidence was cumulative"). Thus, the thrust of State Farm's complaint is that "[o]nce the trial court permitted the jury to hear the umpire's opinions and the bolstering opinions from Ladkin's expert, the trial court should have let State Farm present its controverting expert opinions" i.e., "what was good for the goose should have been good for the gander."

prior to the storm event"[17] and that State Farm's counsel had urged the trial court to permit testimony on "what [the expert] saw in the photos and what those indicate[d]" given that State Farm was asserting "coverage defenses that relate[d] to wear and tear[ and] mechanical damage."[18]

As previously noted, though, State Farm's expert did, in fact, testify on many of these topics. He described at least some of "what he saw in the photos" of Ladkin's property, and he explained the symptoms that he looked for to determine whether roof damage was attributable to hail. Then, after having explained his analytical procedure, he opined that Ladkin's roof shingles had "no damage consistent with hail." This begs the question of what more the expert would have said—the precise question an offer of proof could have answered.[19]

---

[17]Ladkin's objection referenced a portion of her pretrial motion in limine, which portion the trial court read aloud, and which included the quoted language.

[18]Notably, when Ladkin objected to the expert's discussion of preexisting conditions, State Farm commented that it "d[id]n't think it[ wa]s going to be a significant issue."

[19]Even State Farm seems unclear on what else the Pie expert would have addressed. State Farm's opening brief does not detail the anticipated testimony apart from asserting that the expert would have discussed whether the appraised damage had been caused by hail. Then, at oral argument, State Farm alluded to the possibility that any hail damage to Ladkin's roof may have been caused by a post-claim storm—a topic that State Farm had assured the trial court it would not explore with the expert. State Farm's post-submission letter acknowledges its mistake and shifts to its current position that the expert would have explained whether Ladkin's roof damage was attributable to preexisting conditions.

Although we agree with State Farm that causation was a central issue in the case, the preservation rules exist for a reason. And one of the primary reasons for the offer-of-proof requirement is "to enable the reviewing court to assess whether excluding the evidence was erroneous and, if so, whether the error was harmful." *Stephens*, 2024 WL 4233118, at *2 (quoting *Fletcher v. Minn. Mining & Mfg. Co.*, 57 S.W.3d 602, 608 (Tex. App.—Houston [1st Dist.] 2001, pet. denied)); *see Bobbora v. Unitrin Ins. Servs.*, 255 S.W.3d 331, 335 (Tex. App.—Dallas 2008, no pet.) ("While the reviewing court may be able to discern from the record the nature of the evidence and the propriety of the trial court's ruling, without an offer of proof, we can never determine whether exclusion of the evidence was harmful."). Because State Farm did not make an offer of proof clarifying its expert's excluded testimony, "we are left to guess as to its substance and what it might [have] prove[d]," with no way of determining whether the exclusion of such testimony was harmful.[20] *Anderson*, 2024 WL 3195094, at *3 (holding appellant failed to preserve challenge to exclusion of expert testimony because he did not submit an offer of proof or bill of exception); *In re J.V.*, No. 02-19-00392-CV, 2020 WL 1540865, at *8 (Tex. App.—Fort Worth

---

[20]State Farm's expert reports were on file with the trial court as exhibits to unrelated pretrial motions, and at oral argument, State Farm pointed to these filed reports as part of its offer of proof. But State Farm's post-submission letter indirectly acknowledges that its filed expert reports did not constitute an offer of proof. *See Bobbora*, 255 S.W.3d at 335 (holding that expert report accompanying response to written objection was not a sufficient offer of proof); *Sw. Country Enters., Inc. v. Lucky Lady Oil Co.*, 991 S.W.2d 490, 494 n.2 (Tex. App.—Fort Worth 1999, pet. denied) (noting that witnesses' affidavits were on file but such affidavits were not a sufficient offer of proof).

Apr. 1, 2020, no pet.) (mem. op.) (similar, holding mother failed to preserve challenge to exclusion of testimony and evidence); *see Stephens*, 2024 WL 4233118, at *2 (holding appellant failed to preserve challenge to trial court's exclusion and noting that, "[w]ithout an offer of proof or bill of exception, even if we were to conclude that the trial court improperly excluded [the] evidence . . . , we would have no means of determining whether the . . . judgment contained reversible harm").

Because this issue was not preserved, we overrule it.[21]

## D. Ladkin concedes the factual insufficiency of the appellate-fee award.

Finally, State Farm contends that the evidence is factually insufficient to support the jury's award of conditional appellate attorney's fees and that "remand is required." *See Rice v. Rice*, No. 02-21-00413-CV, 2023 WL 109817, at *29–30 (Tex. App.—Fort Worth Jan. 5, 2023, no pet.) (mem. op.) (remanding appellate-fee issue when counsel's "bare opinion" was insufficient to support award); *see also Mendell v. Scott*, No. 01-20-00578-CV, 2023 WL 4712050, at *19–20 (Tex. App.—Houston [1st Dist.] July 25, 2023, pet. filed) (mem. op.) (remanding appellate-fee issue when "appellees' fee expert's testimony lack[ed] the proper detail" and was insufficient to support jury's award). Ladkin concedes as much, acknowledging that she failed to offer "opinion testimony about the services [she] reasonably believe[d] w[ould] be necessary to defend the appeal and a reasonable hourly rate for those services." *Yowell*

---

[21]State Farm's brief lists its challenge to the exclusion of expert causation testimony as issue 2(b).

*v. Granite Operating Co.*, 620 S.W.3d 335, 355 (Tex. 2020). We therefore sustain State Farm's challenge to Ladkin's appellate-fee award.[22]

### III. Conclusion

Because Ladkin concedes that there was factually insufficient evidence of her appellate attorney's fees, we reverse that award and remand the case for a new trial on that narrow issue. Tex. R. App. P. 43.2(d). The remainder of the trial court's judgment is affirmed. *See* Tex. R. App. P. 43.2(a).

/s/ Wade Birdwell

Wade Birdwell
Justice

Delivered: February 6, 2025

---

[22]State Farm raises this challenge as part of issue 2(a) in its brief.